IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| DUBBS DRED, INC. and DUBBS DRED II, INC., | ) | *Electronically Filed* |
|---|---|---|
| *Plaintiffs*, | ) | |
| v. | ) | CIVIL ACTION NO. 2:23-CV-01659-MJH |
| | ) | Honorable Marilyn J. Horan |
| AUTO-OWNERS INSURANCE COMPANY | ) | |
| *Defendant*. | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The Defendant has filed a Motion to Dismiss the Plaintiffs' Amended Complaint, and now the Plaintiffs file this Brief in Opposition to the Defendant's Motion to Dismiss asserting that the Plaintiffs have plead more than sufficient pleadings, and the reasonable inferences drawn therefrom, to establish a claim for Bad Faith under the applicable caselaw.

**PROCEDURAL AND FACTUAL BACKGROUND**

The present action was initiated in state court via a Writ of Summons on September 23, 2022. On September 18, 2023, the Plaintiffs filed a Complaint in state court against the Defendant. Thereafter, on September 21, 2023, the Defendant removed this matter to the Western District of Pennsylvania and filed its first 12(b)(6) Motion to Dismiss on September 28, 2023, alleging a failure to meet federal pleading standards under *Iqbal* and *Twombly*. On October 19, 2023, the Plaintiffs filed an Amended Complaint providing greater detail within their pleadings, as will be discussed

1

further below. On October 24, 2023, the Defendant filed a nearly identical 12(b)(6) Motion to Dismiss, glossing over the additional pleadings.

The Plaintiffs' Amended Complaint asserts counts for Breach of Contract and Bad Faith under 42 Pa. C.S. §8371. See ECF No. 10, generally. The Plaintiffs are the owners of a golf course located within Butler County, Pennsylvania. (ECF No. 10, ¶7). Defendant insured the golf course. *Id.* More specifically, the Plaintiffs assert that on December 21, 2021, a severe windstorm, including a tornado ("the storm"), caused direct physical loss of, or damage to, the Plaintiffs' golf course and caused other damage, including damage to the Plaintiffs' clubhouse roof. (ECF No. 10, ¶8). At the time of the storm, the Plaintiffs and their golf course were insured under Policy No. 204637-68158433-20 with the Defendant. (ECF No. 10, ¶6). Shortly after the storm, Plaintiffs notified the Defendant Insurance Company, and a representative came to the property to examine the damage. (ECF No. 10, ¶9-10).

Among other allegations, the Plaintiffs assert:

> The representative did not inspect the roof other than from the ground and made the following comments: (1) that it should simply be "patched up," (2) there was no need to match the green shingles, saying "put anything up there, 'AO' is not responsible to match shingles" and (3) that the Plaintiffs should "wait until it leaks" to report it to insurance. The Insurance Company did not get on the roof and examine the extent of the actual damage at this time. Contrary to the Insurance Company's preliminary estimates of damage to the roof, nearly every shingle tab was broken.

(ECF No. 10, ¶10). Later, after the roof *did* leak:

> The Defendant informed Plaintiffs to file a new claim for the leaks. Plaintiffs obtained 6 quotes for the damaged Club House roof and the contractors would not guarantee the roof unless it was entirely replaced due the damaged shingle tabs that were dislodged from the tornado. The Insurance Company only offered One Thousand and Three Hundred dollars ($1,300) to repair the same. After four (4) months of waiting for the Defendant with no sufficient repair, Plaintiffs spent the necessary Sixty-Two Thousand dollars ($62,000.00) to repair the Clubhouse Roof.

(ECF No. 10, ¶11). Finally,

> …the Insurance Company sent an "arborist" to assess the damage to 81 trees on the property five (5) months after the claim was made. The Defendant rejected Plaintiffs'

2

offers to have a local "arborist" review the property to expedite the assessment. When the Defendant's expert did arrive five months later, the expert lacked credentials. The Plaintiffs did later receive Seventy-Five Thousand Dollars ($75,000.00) on this claim despite accruing Two Hundred and Two Thousand and Five Hundred Dollars ($202,500.00) in actual damages associated with the trees.

(ECF No. 10, ¶12)

As a result, the Plaintiffs assert that the policy applies and the Defendant failed to conduct a thorough and reasonable investigation and effectively made bad faith "lowball" offers. (ECF No. 10, ¶35-37). Defendant's Motion to Dismiss is solely in relation to Count II for Bad Faith. (ECF No. 13). The Defendant paraphrases the Plaintiffs' fact pleadings in summary fashion within its Brief, glossing over the details, on which it now files its Motion to Dismiss. (ECF No. 13, p.2-3.) However, a clear review of the fact pleadings and relevant caselaw makes it clear that the Defendant's Motion to Dismiss should be denied.

## **STANDARD OF REVIEW**

Under Pennsylvania law, when considering a Rule 12(b)(6) motion, "the complaint's allegations must be construed favorably to the pleader. The Court must accept as true all of the plaintiff's factual allegations and draw from them all reasonable inferences." *Eagle Traffic Control v. Addco*, 882 F.Supp. 417, 418 (E.D. Pa. 1995) (citing *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d. 1991) (citation omitted)). Therefore, the Court will only grant a 12(b)(6) motion in situations in which "the non-moving party cannot prevail legally under the set of facts alleged." *Eagle*, *supra*, (citing *Markowtiz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990).

# ARGUMENT

A. **The Plaintiffs' Amended Complaint alleges sufficient facts to support the allegation that Defendant failed to perform a reasonable investigation of the claim.**

In Pennsylvania, where a plaintiff asserts a bad faith claim based upon a failure to investigate, "[a] plaintiff […] must show that the outcome of the case would have been different if the insurer had done what the insured wanted done." *Blaylock v. Allstate Ins. Co.*, 2008 WL 80056, *13 (M.D.Pa. Jan. 7, 2008)(citing *Zappile v. AMEX Assurance Co.*, 928 A.2d 251, 262 (Pa. Super. 2007); *see also Childs v. Progressive Preferred Ins. Co., 2023 U.S. Dist. LEXIS 105885, *10* (2023) (J. Horan). Here, the Plaintiffs assert within their Amended Complaint that the Defendant's Insurance Representative "did not inspect the roof other than from the ground" and ultimately made a "lowball" offer. (ECF No. 10, ¶10.)

Had the Insurance Carrier got on the roof they would have discovered that "nearly every shingle tab was broken" and made a more substantial offer. *Id.* Furthermore, "the Defendant rejected Plaintiffs' offers to have a local "arborist" review the property to expedite the assessment. When the Defendant's expert did arrive five months later, the expert lacked credentials… [and later made an offer of] Seventy-Five Thousand Dollars ($75,000.00) on this claim despite Plaintiffs accruing Two Hundred Two Thousand Five Hundred Dollars ($202,500.00) in actual damages associated with the trees." (ECF No. 10, ¶12.) Accordingly, had the Defendant utilized a local arborist with sufficient credentials to properly assess the damages, the Defendant would have made a payment reflective of the actual damages. As stated above, "[t]he Court must accept as true all of the plaintiff's factual allegations and draw from them all reasonable inferences." *Eagle Traffic Control v. Addco*, 882 F.Supp. 417, 418 (E.D. Pa. 1995). As a result, the Plaintiff has pled sufficient facts, and drawing

reasonable inferences therefrom, to assert a claim under bad faith for a failure to reasonably investigate. (ECF No. 10, ¶37.)

B.     **The Plaintiffs' Amended Complaint alleges sufficient facts to support the allegation that Defendant made a bad faith "lowball" offer.**

Regarding "lowball offers" as a basis for bad faith claims, "[g]enerally, Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses." *Seto v. State Farm Ins. Co.,* 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (citing *Brown v. Progressive Ins. Co.*, 2004 PA Super 346, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). However, "low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith within the meaning of § 8371." *Seto,* 855 F. Supp. 2d at 430 (citing *Brown*, 860 A.2d at 501); *see also Childs v. Progressive Preferred Ins. Co.*, 2023 U.S. Dist. LEXIS 105885, *12 (2023) (J. Horan).

Here, the Plaintiffs have pled that the Defendant had refused to inspect the roof of the club house shortly after the storm and that every shingle was damaged. (ECF No. 10, ¶10). Plaintiff then had six (6) quotes to repair the entirety of the roof. (ECF No. 10, ¶11). Defendant then paid only One Thousand Three Hundred dollars ($1,300) to repair the same. After four (4) months of waiting for the Defendant with no sufficient repair, Plaintiffs spent the necessary Sixty-Two Thousand dollars ($62,000.00) to repair the Clubhouse Roof, i.e. $1,300 v. $62,000 in repairs. (ECF No. 10, ¶11). Given the large disparity, or at minimum a reasonable inference from the facts pled, and the Defendant's departure from six (6) estimates, show the Defendant's offer bore no reasonable relationship with the actual losses.

Similarly, when the Defendant sent its unqualified expert to assess damage to the trees on the property, he similarly provided an offer that bore no reasonable relationship to the insured's actual losses (i.e. $75,000.00 vs. $202,500.00). (ECF No. 10, ¶12). Or, a minimum the Plaintiffs are entitled

5

to a reasonable inference that the offers bore no reasonable relationship based upon the large discrepancy pled. *Eagle Traffic Control*, 882 F.Supp. at 418.

## CONCLUSION

For all of the reasons set forth above, Plaintiffs, Dubbs Dred, Inc. and Dubbs Dred II, Inc., respectfully request that this Honorable Court deny Defendant's Motion to Dismiss

Respectfully submitted,

Dated: November 14, 2023

*/s/ Joshua D. Brown*
Joshua D. Brown
PA. I.D. No. 315339
Ronald T. Elliott, Esquire
PA I.D. 71567

**DILLON MCCANDLESS KING COULTER & GRAHAM L.L.P.**
128 West Cunningham Street
Butler, PA 16001
724-283-2200
jbrown@dmkcg.com
relliott@dmkcg.com

**JURY TRIAL DEMANDED**