IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| DUBBS DRED, INC., DUBBS DRED II, INC., | )<br>)<br>) |
| Plaintiffs, | )   2:23-CV-01659-MJH<br>)<br>) |
| vs. | )<br>) |
| AUTO-OWNERS INSURANCE COMPANY, | )<br>)<br>) |
| Defendant, | |

OPINION AND ORDER

Plaintiffs, Dubbs Dred, Inc. and Dubbs Dred II, Inc. (collectively "Dubbs Dred"), bring the within action against Defendant, Auto-Owners Insurance Company, concerning its alleged refusal to fully compensate Plaintiffs for weather-related damage under Defendant's insurance policy. (ECF No. 10). Dubbs Dred avers claims for Breach of Contract (Count I) and Statutory Bad Faith under 42 Pa.C.S. § 8371 (Count II). Pursuant to Fed. R. Civ. P. 12(b)(6), Auto-Owners moves to dismiss Dubbs Dred's Bad Faith claim. (ECF No. 12).

Upon consideration of Dubbs Dred's Amended Complaint (ECF No. 10), Auto-Owners' Motion to Dismiss (ECF No. 12), the respective briefs (ECF Nos. 13, 17, and 18), and for the following reasons, Auto-Owners' Motion will be denied.

I. Background

Dubbs Dred avers it owns a golf course located within Butler County, Pennsylvania and it maintains an insurance policy through Auto-Owners. (ECF No. 10 at ¶ 7). On October 21, 2021, Dubbs Dred alleges a severe windstorm, including a tornado, caused the following damages:

> damage to the roof of the Club House, including but not limited to the attached silo storage structure; damage to the Tea House and pavilion located on the Property; damage to the bridges, golf cart paths, and golf carts on the Property; loss of income; substantial debris; and damage to the golf course grounds, including but not limited to the greens, tees, and fairways.

*Id*. at ¶¶ 8, 15. The following day, Dubbs Dredd notified Auto-Owners, who sent a representative a few days later to inspect the damage. *Id*. at ¶¶ 9-10.

During Auto-Owners's inspection, Dubbs Dred alleges the representative did not inspect the roof, other than from the ground, and concluded: (1) that it should simply be "patched up," (2) there was no need to match the green shingles, saying "put anything up there, 'AO' is not responsible to match shingles" and (3) that the Plaintiffs should "wait until it leaks" to report it. *Id*. at ¶ 10. Dubbs Dred avers that, contrary to Auto-Owners's preliminary estimates of damage to the roof, nearly every shingle tab was broken, and, during the first rainfall following the October 21, 2021, the roof leaked. *Id*. Thereafter, Dubbs Dred alleges it obtained six quotes for the damaged Club House roof, and the quoting contractors would not guarantee the roof unless it was fully replaced due the damaged shingle tabs dislodged from the tornado. *Id*. at ¶ 11. Auto-Owners allegedly offered One Thousand and Three Hundred dollars ($1,300) to repair the Club House Roof. *Id*. Eventually, Dubbs Dred expended Sixty-Two Thousand dollars ($62,000.00) for repairs to the Clubhouse Roof. *Id*.

With regard to tree damages, Dubbs Dred alleges that Auto-Owners waited five months to send an "arborist" to assess the damage to 81 trees on the property. *Id*. at ¶ 12. Auto-Owners alleges said "arborist" lacked the requisite credentials. *Id*. Dubbs Dred avers that Auto-Owners rejected offers to have a local "arborist" review the property to expedite the assessment. *Id*. Auto-Owners allegedly paid Seventy-Five Thousand Dollars ($75,000.00) on the claim, but

2

Dubbs Dred alleges that it accrued Two Hundred and Two Thousand and Five Hundred Dollars ($202,500.00) in tree damage. *Id*.

For Auto-Owners alleged failure to refuse to compensate Dubbs Dred, the Amended Complaint asserts claims for Breach of Contract and Bad Faith. Auto-Owners moves to dismiss the Bad Faith claim.

II.     Relevant Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d

Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

III.   Discussion

Auto-Owners argues that Dubbs Dred insufficiently pleads a bad faith claim because the Amended Complaint contains boilerplate allegations regarding its alleged failure to investigate and adequately compensate for damages. Further, Auto-Owners maintains that the only factual allegation to support Dubbs Dred's bad faith claim is a mere disagreement on claim value, which, in and of itself, cannot constitute bad faith. In response, Dubbs Dred contends that it has sufficiently alleged that Auto-Owners failed to conduct a reasonable investigation and made a bad faith "lowball" offer.

The Pennsylvania bad faith statute provides in its entirety:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. To succeed on a bad faith claim, a plaintiff-insured must prove, by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994). Although the term "bad faith" is not defined in the statute, courts have subsequently determined that a variety of carrier actions can constitute bad faith, including "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999); see also *Terletsky*, 649 A.2d at 688.

Where a plaintiff asserts a bad faith claim based upon a failure to investigate, "[a] plaintiff […] must show that the outcome of the case would have been different if the insurer had done what the insured wanted done." *Blaylock v. Allstate Ins. Co.,* 2008 WL 80056, *13 (M.D.Pa. Jan.7, 2008) (citing *Zappile v. AMEX Assurance Co., 928 A.2d 251, 262* (Pa.Super.2007)).   As to a lowball offer, "[g]enerally, Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses." *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)).  However, "low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith within the meaning of § 8371." *Seto*, 855 F. Supp. 2d at 430 (citing *Brown*, 860 A.2d at 501).

Here, as to both the failure to investigate and lowball components to Dubbs Dred's bad faith claim, the Amended Complaint sufficiently pleads plausible facts to support a bad faith claim at this stage. Dubbs Dred has adequately pleaded that, had Auto-Owner's representative fully inspected the Club House roof, Auto-Owners would have valued the claim differently. And as to tree damage, Dubbs Dred has sufficiently pleaded that Auto-Owners utilized an uncredentialed arborist to assess the property damage and thereafter, Auto-Owners' offer did not compensate for the actual value of the loss. Therefore, the Amended Complaint sufficiently supports a factual basis for bad faith based upon Auto-Owners's investigation and offers. Thus, as this stage, the Court cannot conclude that the Amended Complaint does not support a bad faith claim.

Accordingly, Auto-Owners's Motion to Dismiss will be denied.

ORDER

Following consideration of Dubbs Dred's Amended Complaint (ECF No. 10), Auto-Owners' Motion to Dismiss (ECF No. 12), the respective briefs (ECF Nos. 13, 17, and 18), and for the foregoing reasons, Auto-Owners' Motion is denied. Auto-Owners shall file its Answer on or before December 22, 2023.

DATED this 8th day of December, 2023.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge